UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| BIG SKY SCIENTIFIC LLC,<br><br>Plaintiff,<br><br>vs.<br><br>IDAHO STATE POLICE, ADA COUNTY, JAN M. BENNETTS, in her official capacity as Ada County Prosecuting Attorney,<br><br>Defendants, | Case No.: 1:19-cv-00040-REB<br><br>**MEMORANDUM DECISION AND ORDER RE:**<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**(Docket No. 2)**<br><br>**PLAINTIFF'S MOTION TO FILE OVERLENGTH BRIEF**<br><br>**(Docket No. 3)** |

Pending before the Court is Plaintiff Big Sky Scientific LLC's (1) Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2), and (2) Motion to File Overlength Brief (Dkt. 3). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

### I. GENERAL BACKGROUND[1]

**A.  The 2014 Farm Bill**

1.  On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"). Though it did not remove industrial

---

[1] Owing to the nature of the proceedings and the urgency that is necessarily involved, the Court incorporates, in large part, Plaintiff's version of the underlying factual backdrop leading up to the instant dispute. To be clear, this is done out of convenience, and does not constitute a ruling of the Court upon such things.

**MEMORANDUM DECISION AND ORDER - 1**

hemp[2] from federal controlled substance schedules, the 2014 Farm Bill nonetheless provided that, "[n]otwithstanding the Controlled Substances Act . . . or any other Federal law, an institution of higher education . . . or a State department of agriculture may grow or cultivate industrial hemp," provided it is done "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities are allowed under the relevant state's laws. *See* 7 U.S.C. § 5940(a).

2. The so-called "industrial hemp" was defined in the 2014 Farm Bill as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *Id*. at § 5940(b); *see also* Shore Decl., ¶ 3 (Dkt. 2-11) ("Delta-9 tetrahydrocannabinol ("Δ-9 THC") is the principal psychoactive constituent of cannabis and the 'high' experienced by recreational users increases based upon the level of Δ-9 THC. Because industrial hemp has a Δ-9 THC percentage of 0.3 percent or less on a dry weight basis, it has virtually no psychotropic effects and is not used recreationally.").

3. In 2016, the Oregon legislature passed HB 4060 to establish an industrial hemp program allowing for the cultivation and regulation of industrial hemp in Oregon, complying with the 2014 Farm Bill's requirements. *See, e.g.*, Or. Rev. Stat. § 571.333(1) (establishing framework "for the purpose of developing standards for investigating and testing an industrial hemp crop to ensure that the crop contains an average tetrahydrocannabinol concentration that does not exceed 0.3 percent on a dry weight basis.").

**B.    The 2018 Farm Bill**

4. On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 108, Pub. L. 115-334 (the "2018 Farm Bill"), which expanded the definition

---

[2] The terms "industrial hemp" and "hemp" are used interchangeably throughout this Memorandum Decision and Order for convenience in discussing the issues being decided here.

**MEMORANDUM DECISION AND ORDER - 2**

of "industrial hemp" beyond the 2014 Farm Bill to include not only "the plant Cannabis sativa L. and any part of that plant," *but also* "the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *Compare* 2018 Farm Bill § 10113, *with* 2014 Farm Bill § 7606.

5. The 2018 Farm Bill distinguished industrial hemp from marijuana, added industrial hemp to the list of agriculture commodities, and removed industrial hemp from federal controlled substance schedules.

6. Under the 2018 Farm Bill, states and Indian tribes may choose to regulate industrial hemp on their own, and the new legislation expressly says that "No Preemption" is intended of any law of a state or Indian tribe that "regulates the production of hemp" and "is more stringent" than federal law. 2018 Farm Bill § 10113. In other words, though industrial hemp is no longer a controlled substance under federal law, states and tribes may declare it to be a controlled substance under state or tribal law. Idaho does not distinguish industrial hemp from marijuana; both are controlled substances under Idaho law.

7. However, relevant here, the 2018 Farm Bill addressed industrial hemp in interstate commerce, stating:

> (a) RULE OF CONTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No state or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114.

**MEMORANDUM DECISION AND ORDER - 3**

### C. Plaintiff Big Sky Scientific LLC

8. Plaintiff Big Sky Scientific LLC ("Big Sky") was incorporated on December 17, 2018, purportedly to be among the first companies to market in what it believed to be the new and evolving industrial hemp industry. *See* Shore Decl., ¶ 4 (Dkt. 2-11).

9. Big Sky set up operations in Aurora, Colorado, where it plans to receive and process shipments of industrial hemp. *See id.*, ¶ 5. Big Sky's business model is to purchase industrial hemp from state-licensed industrial hemp growers; process it to remove isolates (typically cannabidiol ("CBD") powder) from the industrial hemp; and then sell the CBD powder to consumer products manufacturers who add the CBD powder to a diverse range of products. *See id.* at ¶ 6.

10. Big Sky claims that, by purchasing the industrial hemp and managing its processing to extract the isolates, including CBD powder, it is "positioning itself as a leader in the market for meeting the CBD demands of product manufacturers and the public." *Id.* at ¶ 8

### D. The January 24, 2019 Arrest and Seizure

11. At some unknown time, Big Sky purchased approximately 13,000 pounds of industrial hemp from Boones Ferry Berry Farms ("Boones Ferry") in Hubbard, Oregon. *See* Shore Decl., ¶ 11 (Dkt. 2-11). Big Sky represents that Boones Ferry is an industrial hemp grower licensed with the Oregon Department of Agriculture. *See id.* Big Sky intended to have the industrial hemp shipped from Hubbard, Oregon to Big Sky's processor in Aurora, Colorado. *See id.*

12. Big Sky contracted with a third-party logistics company that arranged for Big Sky's industrial hemp to be shipped by a trucking company named VIP Transporter LLC from Oregon to Colorado. *See id.* at ¶ 12. Given the quantity of industrial hemp, it was shipped in multiple truck loads. *See id.*

**MEMORANDUM DECISION AND ORDER - 4**

13.     On January 24, 2019, a semi-truck carrying the industrial hemp stopped at the East Boise Port of Entry, in Ada County, on Interstate 84. *See id.* at ¶ 14. According to Big Sky, the load was not concealed but, rather, in plain sight in the cargo area of the semi-truck trailer; the driver freely indicated that he was hauling hemp; the driver did not run or otherwise try to escape; and the driver did not try to dispose of the load which he was shipping. *See* Compl., ¶¶ 25-28 (Dkt. 1). The bill of lading that accompanied the load indicated that the shipment consisted of "hemp" and that the shipment was being transported from Oregon to Colorado. *See id.* at ¶¶ 23-24.

14.     The driver was arrested after he stopped at the port of entry; he was charged with marijuana trafficking in Idaho state court, an offense in Idaho that carries a mandatory minimum five-year prison term. *See* Watkins Decl., ¶ 7 (Dkt. 2-2). Additionally, Defendant Idaho State Police ("ISP") seized the contents of the shipping truck, consisting of approximately 7,000 pounds of industrial hemp. *See* Compl., ¶ 31 (Dkt. 1); *see also* Shore Decl., ¶ 15 (Dkt. 2-11).

E.     **The Instant Action**

15.     On January 28, 2019, after the arrest of the driver and seizure of the cargo, Elijah Watkins, counsel for Big Sky, called Shawna Dunn, the Chief Deputy Criminal Prosecutor for Ada County. *See* Watkins Decl., ¶ 8 (Dkt. 2-2). He represented to Ms. Dunn that the cargo was industrial hemp, not marijuana; told her that the 2018 Farm Bill's provision regarding interstate transportation of industrial hemp preempts Idaho's state marijuana laws; described he value and perishable nature[3] of the industrial hemp; and said that the County and/or ISP should release the

---

[3] The importance attached to Big Sky's claim is no doubt motivated, in part, by its contention that industrial hemp is perishable and, if stored improperly, can mold and be destroyed. *See* Shore Decl. ISO Mot. for TRO/PI, ¶ 17 (Dkt. 2-11) ("Industrial hemp is perishable and will mold if proper airflow and climate are not maintained. Once a bale molds, a processor can refuse to process it, making the bale worthless. Even without mold, as harvested industrial hemp sits, the amount of CBD contained within it dissipates.").

**MEMORANDUM DECISION AND ORDER - 5**

industrial hemp cargo or properly store it. *See id*. Mr. Watkins says that Ms. Dunn explained in response that the cargo would not be released; that it was outside her purview to dictate how the seized cargo was stored; that industrial hemp is illegal under Idaho law regardless of the 2018 Farm Bill; and that if she were to release the shipment to Mr. Watkins, she herself would be guilty of a felony. *See id*. at ¶ 9.

16. On January 29, 2019, Mr. Watkins emailed and hand-delivered (1) a letter to Defendant Jan Bennetts (the elected Ada County Prosecutor) and her Deputy Chief Civil Prosecutor, and a largely similar version of the same letter to ISP's Deputy Attorney general, Merritt Dublin, setting forth Big Sky's position. *See* 1/29/19 Ltrs. from Watkins to Bennetts and Dublin, attached as Exs. E & F to Watkins Decl. (Dkt. 2-7, 2-8). Each letter attached reports from two different laboratories, represented to be "state-accredited," along with a copy of Boones Ferry's "industrial hemp license." *See id*. Big Sky contends that such documents evidence that the seized load was, in fact, industrial hemp under the 2018 Farm Bill. *See id*. In each letter, Mr. Watkins contended on behalf of Big Sky that the seizure of the cargo was interference with interstate commerce and that any such interference violated the 2018 Farm Bill and Supremacy Clause of the United States Constitution. *See id*.

17. Responses to both letters came on January 31, 2019, flatly rejecting Big Sky's arguments that the 2018 Farm Bill applied to preclude ISP's January 24, 2019 seizure of Big Sky's load of industrial hemp. *See* 1/31/19 Ltr. from Dublin to Watkins, attached as Ex. G to Watkins Decl. (Dkt. 2-9); 1/31/19 Ltr. from Roscheck to Watkins, attached as Ex. H to Watkins Decl. (Dkt. 2-10). Counsel for Ada County and ISP set out their position that the regulatory framework for industrial hemp required by the 2018 Farm Bill had not yet been created, such that the hemp that had been seized could not have been "produced in accordance with subtitle G of the Agricultural Marketing Act of 1946" as is required, and thus also did not fall under the

**MEMORANDUM DECISION AND ORDER - 6**

interstate commerce protections of the 2018 Farm Bill for the transportation of industrial hemp. *See, e.g.*, 1/31/19 Ltr. from Roscheck to Watkins, attached as Ex. H to Watkins Decl. (Dkt. 2-10) ("According to your letter, the contraband was produced in Oregon. Based on our review, Oregon does not have a federally approved plan and the Secretary of the United States Department of Agriculture has yet to establish its own plan. Thus, assuming for the sake of argument that the 2018 Farm Bill even applies, the contraband could not have been produced in accordance with subtitle G and Idaho is free to prohibit its transportation or shipment through the state.").

18. On February 1, 2019, Big Sky filed this legal action pursuant to 28 U.S.C. § 2201 and FRCP 57, seeking a declaratory ruling as to Big Sky's rights under the 2018 Farm Bill, the Commerce Clause, and/or interstate commerce principles. *See generally* Compl. (Dkt. 1). Specifically, Big Sky seeks a ruling declaring that (1) "Defendants improperly seized Big Sky's property and have improperly refused to return Big Sky's property after the seizure given the language of the 2018 Farm Bill forbidding states from prohibiting the interstate transportation or shipment of industrial hemp through a state"; and (2) "Defendants improperly seized Big Sky's property and have improperly refused to return Big Sky's property after the seizure given the Commerce Clause and/or interstate commerce principles, which prevent state prohibition with the interstate shipment or transportation of a lawful good." *Id.* at ¶¶ 42 & 50.

19. On the same day, Big Sky filed its Emergency Motion for Temporary Restraining Order and Preliminary Injunction, seeking entry of a temporary restraining order and an injunction under FRCP 65 to enjoin Defendants "from violating the clear commands of the [2018 Farm Bill] and the Commerce Clause, and to order Defendants to immediately return Big Sky's property." Mem. ISO Emerg. Mot. for TRO/PI, p. 1 (Dkt. 2-1). Alternatively, citing to FRCP 66, Big Sky requests that the Court appoint an emergency receiver to safeguard Big Sky's

**MEMORANDUM DECISION AND ORDER - 7**

"valuable, federally-protected property, pending final resolution of the matter." Mot. for TRO/PI, p. 2 (Dkt. 2).

## II. DISCUSSION

### A. Legal Standard

FRCP 65(b) prescribes the process by which a request for preliminary injunctive relief, to include a temporary restraining order, is presented to the Court. Such relief, whether in the form of a temporary restraining order or a preliminary injunction, are subject to the same burden of proof.[4] *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832 n.7 (9th Cir. 2001). A temporary restraining order may issue if a plaintiff shows: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to them in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20-23 (2008).

It is axiomatic that "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 22. However, the Ninth Circuit has held that the trial court can utilize a "sliding scale" in weighing the *Winter* factors, such that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir.

---

[4] FRCP 65(b) prescribes, among other things, that if a temporary restraining order is sought without written or oral notice to the adverse party or its attorney, then certain details must be provided in an affidavit or verified complaint, and a written certification must be given by the movant's attorney regarding efforts to give notice and reasons why it should not be required. *See* Fed. R. Civ. P. 65(b). The Court presumes from the record before it that the attorneys for the Defendants have been given notice of the pending Motion, and therefore those requirements are not applicable here. The Court is ruling in this Decision on Big Sky's request for a temporary restraining order, which has been described as an "emergency" motion, without waiting to hear from counsel for Defendants. As is further described herein (and elsewhere), there will be an opportunity for Defendants, through their counsel, to argue their position.

**MEMORANDUM DECISION AND ORDER - 8**

2011). Where such serious questions upon the merits exist, the Court can choose to grant preliminary relief where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction. *See id*. at 1132. Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair choice of success on the merits.'" *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988).

**B.** **A Temporary Restraining Order Is Not Warranted Because Significant Questions Exist as To What Constitutes "Hemp" Under The 2018 Farm Bill And, Thus, Whether Plaintiff Has A Likelihood Of Success On The Merits**

Big Sky's argument for injunctive relief is straightforward enough – it purchased hemp, as that agricultural product is defined under the 2018 Farm Bill (specifically, subtitle G); hemp is no longer a controlled substance under federal law; and finally, Idaho cannot interfere with the transportation of hemp in interstate commerce. *See* Mem. ISO Emerg. Mot. for TRO/PI, pp. 12-17 (Dkt. 2-1). However, the difficulty for the Court in accepting Big Sky's argument lies in gleaning whether the product that was seized from the Big Sky shipment is "hemp" under the 2018 Farm Bill amendments, when the current record suggests that the timing of the hemp harvest and shipment predate the creation of either a state or federal "plan" as called for in the 2018 Farm Bill's regulatory framework for hemp production. The attachments to the Motion include correspondence between counsel for Big Sky and the Defendants. The letters submitted by Defendants' counsel invoke the requirement to comply with subtitle G. *See* 1/31/19 Ltr. from Dublin to Watkins, attached as Ex. G to Watkins Decl. (Dkt. 2-9); 1/31/19 Ltr. from Roscheck to Watkins, attached as Ex. H to Watkins Decl. (Dkt. 2-10). Yet, Big Sky does not contend, and it

**MEMORANDUM DECISION AND ORDER - 9**

is not clear on the present record whether it could contend, that the product seized was actually produced in compliance with subtitle G.[5]

The question is framed by Section 10144 of the 2018 Farm Bill, entitled "Interstate Commerce," which reads:

> (a) RULE OF CONTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No state or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products **produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State** or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114 (emphasis added). Subsection (a) can be read as authorizing interstate commerce of hemp, and Big Sky emphasizes this provision in both its counsel's correspondence to Defendants, as well as its briefing now before the Court. But it is subsection (b) that speaks

---

[5] There also are issues as to the evidence purporting to establish that the seized cargo is, in fact, industrial hemp under the 2018 Farm Bill definition. That definition is "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *See* 2018 Farm Bill § 10113. Big Sky contends that the shipment at issue "was certified by two different state-accredited laboratories as falling well below the 0.3 percent Δ-9 THC limit." Mem. ISO Emerg. Mot. for TRO/PI, p. 12 (Dkt. 2-1).

The evidence submitted includes a Certificate of Analysis from ChemHistory, an Oregon lab (Ex. B to Watkins Decl. (Dkt. 2-4)) and a "Δ-9 THC/CBD Potency Test Results" chart from the Good Lab, a Colorado lab (Ex. C to Watkins Decl. (Dkt. 2-5)). But the ChemHistory report has blanks where there should be listings of batch number, batch size, and harvest/production date. The sample was received October 24, 2018 and the report was created October 26, 2018. The cargo of hemp was seized by Defendants three months later, on January 24, 2019.

In his declaration, Big Sky's CEO Ryan Shore says that Big Sky "requires licensed hemp growers to produce signed invoices outlining the total quantity shipped to the pound with certification that the shipment has a Δ-9 THC concentration level of 0.3 percent or less." Shore Decl., ¶¶ 1, 10 (Dkt. 2-11). But those invoices are not in the record.

**MEMORANDUM DECISION AND ORDER - 10**

directly to transportation or shipment of hemp or hemp products and it is this provision that the Defendants – at least as reflected by their correspondence with Plaintiff's counsel – rely upon.

Specifically, Defendants point to the language of "hemp or hemp products produced in accordance with subtitle G." Subtitle G contains not just the definition of hemp (which is the fulcrum of Plaintiff's argument), but also the provisions detailing how states can create their own regulatory plan for hemp production and the means (the obligation actually) by which the Secretary of the United States Department of Agriculture is to create a federal regulatory plan for hemp production. Subtitle G requires a myriad of procedures, record-keeping requirements, inspection requirements, enforcement requirements, and other details which create a statutory frame around the production of hemp in the United States. *See, e..g.*, 7 U.S.C.A. 1639p-r.

The takeaway from an examination of the respective arguments of Big Sky and the Defendants (again, as discerned from their written correspondence with Big Sky's counsel) is that a reasonable argument can be made that even though Big Sky may, at some point in time, be able to purchase industrial hemp that has been "produced in accordance with Subtitle G," the hemp that was seized in Idaho could not possibly meet that standard because no "plans" to regulate the production of industrial hemp under the 2018 Farm Act have either been approved (by the federal government as to Oregon, as pertinent here) or created and promulgated by the United States Department of Agriculture for the federal government (to apply in the absence of an approved state or tribal plan).

Particularly when the relevant and specific language found in subsection (b) follows directly on the heels of the prior section speaking generally about interstate commerce, the Court cannot conclude on this record, that Big Sky has a likelihood of success on the merits. Nor can the Court conclude that, even if it is uncertain whether Big Sky is more likely than not to prevail on the merits of the underlying claims, the costs outweigh the benefits of not granting the

**MEMORANDUM DECISION AND ORDER - 11**

injunction and therefore injunctive relief should issue. Primarily, the Court is attentive here to the circumstances – that is, the record carries a question as to whether Big Sky (in its efforts to get to the front of the burgeoning industry that is forming around industrial hemp) went forward without being certain that it could move any hemp it might buy from one state to another, or did so without paying attention to whether one route from Oregon to Colorado might be better than another. In one setting, it might be said that Big Sky was taking a gamble that it thought was worth taking; in another view, it might be said that Big Sky did not realize that Idaho might take a different position about whether Big Sky was free to move industrial hemp around the country (or at least across its borders). In either instance, the scale that the Court is permitted to draw from the record now before it does not slide so far as to overcome the open question about what constitutes "hemp" under the 2018 Farm Bill and the status of the regulatory framework required by that legislation.

It remains to be seen whether the Court's assessment of those matters (and/or their measure against the sliding scale) changes after the record is more fully developed. In the meantime, there is always the possibility that ISP may have miscalculated, and that it should be considering taking affirmative steps to preserve the value of the industrial hemp that it has seized, or to reach some agreement for its return while still preserving the criminal case, if that is possible.

Because of the Court's ruling on the likelihood of success element of the *Winter* test, and its assessment of how the balancing of that element might be weighed against the other parts of the *Winter* test, it is not necessary at this time to consider the other factors against the present record. This is not to say that Big Sky cannot prevail on the merits or even that Big Sky cannot subsequently prevail on its alternative request for a preliminary injunction. But on the present

record, due to the evidentiary and legal issues identified above, Big Sky has not persuaded the Court that it is likely to succeed on the merits.

### III. ORDER

Based upon the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) is DENIED. Under its own motion and consistent with FRCP 65, the Court will set Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) for hearing by separate Notice and Order; and

2. Plaintiff's Motion to File Overlength Brief (Dkt. 3) is GRANTED.

DATED: February 2, 2019

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 13**